IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GENERAL ELECTRIC BUSINESS
FINANCIAL SERVICES INC., d/b/a
MERRILL LYNCH BUSINESS
FINANCIAL SERVICES, INC.,

              Plaintiff,

      v.

THOMAS E. HEDENBERG and RAY H.
TRESCH,

             Defendants.

Case No. 10 C 5094

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff General Electric Business
Financial Services Inc.'s (hereinafter, the "Plaintiff") Motion for
Summary Judgment on its one-count Complaint. For the reasons
stated below, the Motion is granted.

## I. INTRODUCTION

In the fall of 2007, Plaintiff entered into a Loan Agreement
with Grove Street Urban Renewal, L.L.C. (hereinafter, "Grove
Street"). Under the Agreement, Plaintiff agreed to loan Grove
Street more than $32 million to fund the Rivercove multi-unit
residential apartment complex in West Deptford, N.J. Grove Street
executed and delivered a Tranche A Promissory Note in favor of
Plaintiff for the original principal amount of $26,367,255, and a
Tranche B Promissory Note in favor of Plaintiff for the original

principal amount of $5,961,428. Grove Street's managing members Thomas Hedenberg and Ray Tresch (hereinafter, the "Defendants") executed a Limited Joinder that attached to the Loan Agreement, under which they guarantied the principal, interest, penalties, fees, and other charges due on the Grove Street loan.

On April 30, 2010, the 30-month loan matured, with Grove Street having failed to pay fully the amounts due. On July 1, 2010, Grove Street filed a Chapter 11 bankruptcy petition in the District of New Jersey Bankruptcy Court. Plaintiff proceeded to demand that Defendants pay the amounts due on the Grove Street loan, pursuant to the Limited Joinder. This breach of guaranty action results from Defendants' refusal to pay Plaintiff the amounts due under the Loan Agreement, a liability that Plaintiff alleges emerges from the Limited Joinder.

## II.  LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine

issue of material fact exists that warrants trial. *See id*. at 249. In making this determination, the Court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). A court need not consider nonmaterial facts. *See Manning v. Potter*, 250 Fed.Appx. 743, 745 (7th Cir. 2007).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *See Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984).

### III. <u>ANALYSIS</u>

Defendants present three arguments why summary judgment is improper. The Court addresses each in turn.

### A. Plaintiff Is the Real Party in Interest

Defendants argue that Merrill Lynch Business Financial Services Inc. (hereinafter, "Merrill Lynch") is the lender with which Grove Street entered into the Loan Agreement and with which they executed the Limited Joinder, making General Electric Business Financial Services Inc. (hereinafter, "GEBFS") an improper

plaintiff. Under the Federal Rules of Civil Procedure, "[a]n action must be prosecuted in the name of the real party interest." FED. R. CIV. P. 17(a). The parties agree that Illinois substantive law applies to this case. In Illinois, the party seeking relief must possess an enforceable right under the applicable substantive law. *See Byrd-Tolson v. Supervalu, Inc.*, 500 F.Supp.2d 962, 969 (N.D. Ill. 2007). A corporation that changes its name prior to a lawsuit should be identified by its new name in the lawsuit. *See, e.g., Ernest Freeman & Co. v. Robert G. Regan Co.*, 76 N.E.2d 514, 519 (Ill. App. 1947) (finding that when a defendant corporation changes its name prior to the commencement of a lawsuit, plaintiff should sue the corporation under its new name because "[a] corporation retains its corporate identity when it changes its name"). Accordingly, a corporation that simply changes its name retains the rights and liabilities it possessed prior to the identity switch. *See id.*

As Plaintiff demonstrates, this case does not present a situation in which the Loan Agreement, Notes, and Limited Joinder were sold or transferred between parties. Rather, Plaintiff has submitted two pieces of evidence establishing that one corporation has retained custody of the agreements from origination through the present date. First, it tendered an affidavit from Ingrid Carlino, a senior asset manager assigned to the Grove Street loan, that Merrill Lynch changed its name to GEBFS on March 26, 2008. Pl.'s

Statement Material Facts Ex. 2.  Second, it submitted a certificate from the Delaware Secretary of State that Merrill Lynch changed its name to GEBFS on March 26, 2008.  Pl.'s Resp. Defs.' Statement Material Facts Ex. 4.  Defendants have not submitted any evidence that contradicts that the change from Merrill Lynch to GEBFS was simply a name change.  Because no genuine issue exists that Merrill Lynch changed its name, GEBFS is the proper plaintiff, as it is the real party in interest.

## B.  Plaintiff Properly Pleaded a Breach of Guaranty

Defendants allege that Plaintiff failed to plead one of the three factors in an action to enforce a guaranty, thereby precluding it from summary judgment.  In Illinois, a *prima facie* case for an enforcement of a guaranty requires (1) proof of the original indebtedness, (2) the debtor's default, and (3) the guaranty.  *See Fed. Nat'l Mortg. Ass'n v. Wisniewski*, No. 08-C-1976, 2009 WL 3233102, at * 5 (N.D. Ill. Oct. 5, 2009).  Plaintiff crafted its Complaint as a breach of contract, and as such enunciated the four elements of such a claim:  (1) a contract, (2) its performance of the contract's conditions, (3) Defendants' breach, and (4) damages.  *See Roberts v. Adkins*, 921 N.E.2d 802, 819 (Ill. App. 2010).  While breach of guaranty and breach of contract claims have different elements, they are closely aligned, with a guaranty enforced according to general contract principles.  *See F.D.I.C. v. Rayman*, 117 F.3d 994, 998 (7th Cir. 1997) ("In

Illinois, a guaranty is a legally enforceable contract that must be construed according to its terms, so long as they are clear and unambiguous."). As such, the Court determines Defendants' liability through construction of the Limited Joinder guaranty contract. *See Bank Am. Nat. Trust & Savings Ass'n v. Schulson*, 714 N.E.2d 20, 24 (Ill. App. 1999).

Turning to the elements of the breach of contract claim, no material dispute exists concerning the existence of the Limited Joinder, Plaintiff's performance on its conditions (addressed *infra* in the analysis of Defendants' argument that Plaintiff breached the covenant of good faith and fair dealing), and Plaintiff's damages. The only dispute concerns the alleged breach. The breach is determined using the elements of a breach of guaranty, and here the only disputed element is whether Plaintiff has pled that Grove Street defaulted on its loan.

Defendants cite Illinois pleading standards in their attempt to show that Plaintiff has not properly pled a breach of guaranty. However, federal pleading standards apply in a case brought under diversity jurisdiction, regardless of whether the claim arises under state or federal law. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). As such, Plaintiff's Complaint need only include "sufficient facts to state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). Although a complaint does not need detailed

factual allegations, it must provide the grounds of the claimant's entitlement to relief, contain more than labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In this case, the Complaint reads: "On April 30, 2010, the Loan matured without Grove Street paying in full all payments, interest and other sums then due and owing." Compl. ¶ 13. Defendants are correct in that neither this statement nor any other paragraph in the Complaint contains the word "default." However, the federal pleading standards do not require such a precise recitation of the elements of a cause of action. *See Twombly*, 550 U.S. at 555. The Complaint clearly alleges that Grove Street failed to make the payments required under the Loan Agreement, and Defendants do not deny these allegations. This constitutes a default by Grove Street. As such, Plaintiff has properly pleaded a breach of guaranty, and therefore has pleaded a breach of the Limited Joinder. Improper pleading does not bar summary judgment.

### C. Plaintiff Did Not Breach the Covenant of Good Faith and Fair Dealing

As their final argument against summary judgment, Defendants allege that genuine issues of material fact exist whether Plaintiff breached an implied covenant of good faith and fair dealing in the Loan Agreement with Grove Street, thereby preventing their recovery pursuant to the Limited Joinder. They attempt to craft an argument

that but for Plaintiff's actions involving the construction loan, Grove Street would have met its payment obligations, thereby mooting their guaranty obligations. This argument fails, however, as Defendants have not presented any facts that Plaintiff acted in bad faith.

Defendants are correct in that the affirmative defense waiver in the Limited Joinder did not waive the covenant of good faith and fair dealing. *See Fifth Third Bank (Chicago) v. Stocks*, 720 F.Supp.2d 1008, 1011–11 (N.D. Ill. 2010). "The covenant of good faith requires that a party vested with contractual discretion exercise that discretion reasonably, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation[s] of the parties." *N. Trust Co. v. VIII S. Michigan Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. 1995). This covenant, however, does not overrule or modify express contractual terms. *See Fifth Third Bank*, 720 F.Supp.2d at 1012.

As an initial matter, the Court could strike this affirmative defense without considering its merits, as Defendants did not include it in their Answer. *See* Fed. R. Civ. P. 8(c)(1). This pleading failure could constitute a waiver of this defense. *See LaSalle Bus. Credit, Inc. v. Lapides*, No. 00-C-8145, 2003 WL 722237, at *14 (N.D. Ill. Mar. 3, 2003) ("The purpose of this rule is to avoid surprise and undue prejudice to the plaintiff by providing the plaintiff with notice and the opportunity to

demonstrate why the defense should not prevail."). This failure can constitute harmless error, however, if a plaintiff has an adequate chance to respond to it. *See id*. Here, Plaintiff has not argued that it was prejudiced by Defendants raising this defense. Therefore, the Court considers its merits.

Defendants cite two instances in which Plaintiff breached the covenant of good faith and fair dealing. First, they argue that Plaintiff acted in bad faith by denying Grove Street's request of $199,397 from the interest holdback to market the Rivercove units. Conspicuously absent from the Loan Agreement, however, is any requirement for Plaintiff to disburse interest holdback funds — or any other funds allocated pursuant to the Agreement — for marketing. Paragraph 2.10(c) of the Loan Agreement, which relates to the interest holdback, reads: "Lender may, in its discretion, make an advance from the Interest Holdback in order to pay any amount of interest. . . ." Compl. Ex. A at 18. Defendants present an illogical argument that Plaintiff could somehow act in bad faith by failing to comply with a nonexistent contractual obligation. In fact, Plaintiffs would have breached the Loan Agreement had they allocated funds from the interest hold back — even less than 10 percent of the reserve's funds — for marketing purposes. Plaintiff's compliance with the Loan Agreement simply cannot serve as the basis for a breach of a good faith covenant.

Next, Defendants claim that Plaintiff failed to apply Grove Street's May 4, 2010, insurance escrow payment to the May 2010 property insurance premium.  Here, Defendants fail to allege that this missed insurance payment in any way affected Grove Street's ability to make payments under the Loan Agreement.  As such, this allegation is immaterial to Defendant's obligations under the guaranty.  Regardless of the dispute whether Plaintiff or Grove Street was required to make this payment, the circumstances that led to this alleged three-day lapse of insurance coverage — which did not result in any actual financial injury to Grove Street — does not show that Plaintiff exercised it contractual discretion arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.  *N. Trust Co.*, 657 N.E.2d at 1104.  As such, this final defense fails, as Defendants have not raised a genuine issue of material fact that Plaintiff breached the covenant of good faith and fair dealing.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is granted.

Defendants are liable to Plaintiff as follows:

1.   $30,308,707.45 in unpaid principal under the Notes;

2.   $1,565,910.11 in interest under the Notes (as of December 6, 2010);

3.   $646,574.00 exit fee;

4.  $76,271.57 in late charges (as of December 6, 2010);

5.  $2,517.24 in miscellaneous fees and costs; and

6.  $81,455.86 in legal fees and costs (as billed through October 31, 2010).

Plaintiff shall provide Defendants and the Court with updated interest, late fee, and legal fees and costs figures calculated as to the date of this judgment, to allow the Court to make a final calculation of Defendants' liability.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 4/7/2011